**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMEN OGANISYAN,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Attorney General of the United States, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Director of Enforcement and Removal Operations for the United States; and JAMES JANEKA, Warden, Adelanto ICE Processing Center,<br><br>Respondents. | No. |

PETITION FOR WRIT OF HABEAS CORPUS

Nathaniel L. Nicoll, Esq.
Friedman Law Firm
3947 Lennane Drive, Suite 150
Sacramento, CA 95834

## 1. INTRODUCTION

1. Petitioner Armen Oganisyan ("Petitioner") (A# 249-376-098) is in ICE custody in Adelanto, California despite having not been convicted with any violation of the laws of the USA since his initial entry into the country on or about May 16th, 2024. Petitioner's re-detention is arbitrary, unlawful, and a violation of his due process rights, and he requests that this Court order his immediate release from ICE custody.

2. The re-detention of Petitioner without new justification provided by Respondents before a neutral magistrate that Petitioner has become a flight risk or a danger to the community is a violation of Petitioner's Fourth Amendment rights and contravenes the requirements of the Supreme Court in *Gerstein v. Pugh*, in particular the requirement that Petitioner be provided with a hearing before a neutral and detached magistrate not involved in law enforcement, a judicial determination of probable cause as to extended restraint of liberty being required.

3. Petitioner's detention also violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), his removal not being reasonably foreseeable, unrelated to the protection of the community, and he not being a flight risk, essentially punitive in nature.

4. ICE's ongoing re-detention of Petitioner without a swift, individualized determination of whether he should remain detained is inconsistent with ICE's own long-standing policy, thereby violating the Administrative Procedure Act (APA) and due process. See *Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

## 2. JURISDICTION & VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 (the general grant of habeas authority to the district court); Art. I § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"); 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 2201, 2202 (Declaratory Judgment Act).

6. Federal district courts have jurisdiction to hear habeas claims by non-citizens challenging the lawfulness of their detention. See, e.g., *Zadvydas*, 533 U.S. at 687.

7. Additionally, through the APA, federal courts have federal question jurisdiction empowering them to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (providing that judicial review of agency action under the APA may proceed by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus"). The

APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The capricious re-detention and continued detention of Petitioner by Respondents for an arbitrarily period without a hearing before a neutral magistrate adversely and severely affects Petitioner's liberty and freedom.

8. Pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1), venue is proper in this district and division because Petitioner is detained within this district at the Adelanto ICE Processing Center, Adelanto, California.

## 3. PARTIES

9. Petitioner is a native and citizen of Russia. Respondent timely filed a Form I-589 application for asylum, withholding of removal, and protection under CAT with the Executive Office for Immigration Review.

10. Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security (DHS). DHS oversees ICE, which is responsible for administering and enforcing the immigration laws. Secretary Mullin is the ultimate legal custodian of Petitioner. He is sued in his official capacity.

11. Todd Blanche is the Attorney General of the United States. He oversees the immigration court system, which is housed within the Executive Office for

Immigration Review (EOIR) and includes all Immigration Judges and the Board of Immigration Appeals (BIA). He is sued in his official capacity.

12. Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement (ICE). He has national authority over ICE detention operations and policies. He is sued in his official capacity.

13. James Janecka is the Warden of Adelanto ICE Processing Center, the facility where Petitioner is detained. He is Petitioner's immediate physical custodian and is sued in his official capacity.

## 4. LEGAL FRAMEWORK

14. 8 U.S.C. § 1225(b) sets forth DHS's detention authority related to the "inspection" process. The first subsection, § 1225(b)(1), governs the detention of noncitizens placed in "expedited removal" proceedings, a fast-track form of removal that traditionally has applied only at the border and ports of entry. The second subsection, 8 U.S.C. § 1225(b)(2), governs the detention of noncitizens who are "applicant[s] for admission," are actively "seeking admission," and are "not clearly and beyond a doubt entitled to be admitted," but who are placed in removal proceedings before an immigration judge (also known as "Section 240 proceedings" or proceedings under 8 U.S.C. § 1229a instead of expedited removal).

15. On its surface, § 1225 appears to offer few paths to release. Noncitizens subject to subsection § 1225 are not statutorily eligible for bond from an immigration judge unless constitutional and due process concerns arise. However, DHS can release individuals for various reasons including humanitarian purposes, family unity, and public interest, among other reasons under 8 U.S.C. § 1182(d)(5).

16. Regardless of the reason for discretionary release, a DHS officer may not release a noncitizen unless the individual is neither a flight risk nor a danger to the community. See 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8) (noncitizen is required to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [individual] is likely to appear for any future proceeding"); see also 8 C.F.R. § 212.5 (humanitarian parole available only when the potential parolee presents "neither a security risk nor a risk of absconding").

17. As a result, any "[r]elease" of a noncitizen "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

18. Statutory and regulatory provisions governing re-arrest also depend on the manner of release. Certain DHS officials may terminate humanitarian parole upon

written notice when they determine that the purpose for parole has been "accomplish[ed]" or when "neither humanitarian reasons nor public benefit warrants the [noncitizen's] continued presence . . . in the United States[.]" 8 C.F.R. § 212.5(e)(2)(i). DHS has, however, long had a consistent policy and regular practice of re-detaining noncitizens in removal proceedings only when there was a material change in the individual circumstances related to their flight risk or potential danger to the community.

19. The federal government's authority, however, is constrained by an important implicit limitation: It is prohibited from re-arresting or re-detaining someone without a material change in circumstances. *Saravia*, 280 F. Supp. 3d at 1197. Moreover, civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.")

20. In the immigration setting, this prohibition means that an individual who immigration authorities released from initial custody cannot be re-arrested solely

on the ground that he is subject to removal proceedings without some new, intervening justification. *Saravia*, 280 F. Supp. at 1196. The Fourth Amendment, which applies to seizures by immigration authorities, prohibits such re-arrests, something courts have long held could result in harassment by continual rearrests. *United States v. Holmes*, 452 F.2d 249, 261 (7th Cir. 1971) (Stevens, J.); see also *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (applying Fourth Amendment reasoning from criminal matters to restrict the scope of immigration agents' seizure authority); *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 817 (9th Cir. 2020). Moreover, once an individual is taken into custody, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish any meaningful protection from unfounded interference with liberty. *Gerstein v. Pugh*, 420 U.S. 103 (1975). The Supreme Court went on to caution that in situations involving the potential for prolonged detention, the stakes are high and the detached judgment of a neutral magistrate not engaged in law enforcement activities is essential and that review of any probable cause determination for the detention must occur within 48 hours.

21. This prohibition also derives from the paramount constitutional protections embodied in the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). These due process protections are afforded "all 'persons' within the United States … whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas*, 533 U.S. at 693).

22. The Supreme Court has repeatedly held in unequivocal terms, the inviolate rights embodied in the Due Process Clause: "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). This includes "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Moreover, due process demands that any forms of civil detention, immigration detention included, bear a reasonable relation to a non-punitive objective. See *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

23. The Supreme Court recognizes only two permissible non-punitive reasons for immigration detention: ensuring a noncitizen's appearance at immigration proceedings or compliance with a removal order and protecting the community from danger. *Zadvydas*, 533 U.S. at 690-92; see *Demore v. Kim*, 538 U.S. 510, 519-20, 527–28, 531 (2003). In evaluating these purposes, immigration custody

decisions typically must be based on an individualized determination of flight risk and any potential danger to the community. See *INS v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 194 (1991); see also *Zadvydas*, 533 U.S. at 690; *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 188 (D.D.C. 2015).

24. Additionally, those who are released from government custody possess a protected liberty interest in staying out of custody. This decision to allow Petitioner to live freely in the community gives rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). After Petitioner entered the United States in 2024 and filed an asylum application and related documents, Respondents made a decision not to detain him during the pendency of his applications.

25. As such, the Supreme Court has consistently found that re-detention after conditional release is contingent upon a hearing prior to any deprivation of liberty. *Young v. Harper*, 520 U.S. 143, 152 (1997) *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). People released from civil immigration detention are protected by these principles to at least the same degree as those in criminal settings. Individuals, regardless of immigration status, living in the United States have a protected liberty interest in being free from arbitrary confinement. See *Zadvydas, 533* U.S. at 690.

26. Were 8 U.S.C. § 1225(b) construed as allowing ICE to re-arrest and re-detain noncitizens for any reason not rooted in a material change of circumstances, it would pose grave constitutional questions under the Fourth Amendment and the Due Process Clause.

## 5. STATEMENT OF FACTS

27. Petitioner was born in Russia and is a citizen of Russia. Petitioner is not a citizen of any other country. (See Second Notice to Appear attached hereto as Exhibit 1).

28. Petitioner fled Russia because of persecution by the government authorities of Russia and came to the United States to seek asylum on May 16th, 2024.

29. DHS charged Petitioner as removable under Sections 212(a)(7)(A)(i)(1) of the Immigration and Nationality Act and subsequently released Petitioner into the United States.

30. On September 28th, 2026, Petitioner was detained during a regularly scheduled ICE check-in.

31. Petitioner was not given notice of Respondents' intention to detain him or provided with a hearing at which Respondents' demonstrated through clear and convincing evidence that as result of changed circumstances, Petitioner was a flight risk or a danger to the community.

32. Petitioner continues to be detained by Respondents as a result of his unjustified re-detention at the Adelanto ICE Processing Center in Adelanto, California.

## 6. ARGUMENT

### I. Petitioner was previously found by Respondents to be neither a flight risk nor a danger to the community and any re-detention without a determination that there has been a material change in this regard is unconstitutional.

33. Federal immigration officials have long adhered to a policy of not re-arresting and re-detaining noncitizens who have been released pending removal proceedings, unless there has been an individualized determination concerning a material change with respect to whether a particular person poses a flight risk or danger to the community.

34. The Board of Immigration Appeals has made it clear that the government cannot not re-detain an individual released by an immigration judge on bond without a showing by the government that a change of circumstance justifying detention has occurred. *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); see also *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021).

35. The policy has been repeatedly reiterated by federal immigration officials. INS' policy emphasized that when an individual was released from custody under bond, the bond could only be revoked based upon changed circumstances at the

direction of the district director, requiring an additional, new justification. *Demore v. Kim*, 2002 WL 34705774 (U.S. Aug. 29, 2002).

36. While for several years Respondents did not engage in blanket, unjustified re-detention of asylum seekers, in 2025, Respondents did an about-face concerning this policy and adopted the re-detention policy, which essentially authorizes the arbitrary re-detention of previously released individual without an individualized evaluation of whether they had become a flight risk or a danger to the community.

37. ICE now enforces its new policy of re-arrests at immigration courts, ICE offices, USCIS offices, and various other locations nationwide. These re-arrests have targeted individuals like Petitioner who have not had any material change in circumstances with respect to whether they pose a flight risk or danger to the community. On the contrary, these individuals have typically complied with the requirements that the government imposed on them, including attending immigration court hearings and ICE appointments.

38. Respondents detained Petitioner at a regularly scheduled ICE check-in without a demonstration before a neutral court that Petitioner was a danger to the community or a flight risk – the two principal justifications for immigration detention recognized by the Supreme Court. See *Zadvydas*, 533 U.S. at 690-92; *Demore*, 538 U.S. at 519-20, 527-28, 531. The government previously released

Petitioner on his own recognizance because he did not pose a risk of flight or a danger to the community.

39. As a result of the violation of Petitioner's liberty interests, Petitioner has been detained in a detention facility hundreds of miles away from his home as well as deprived of his ability to work and to take care of his responsibilities. This violation has also constrained Petitioner's access to his immigration attorneys and placed undue additional mental strain upon him.

**II. Continued detention of petitioner by Respondents without reviewing his custody violates the APA and due process.**

40. Per the Accardi doctrine, agencies must follow their own rules that impact the fundamental rights of individuals, including self-imposed processes that limit discretionary decisions. See *Accardi*, 347 U.S. at 226 (finding that the BIA, when exercising discretion, must follow its own regulation.); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that, when an individual's rights are impacted, it incumbent upon agencies to follow their own regulations).

41. In the event an agency fails to adhere to their own policies, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA. Prejudice is usually presumed when an agency violates its own policy. See Montilla, 926 F.2d at 167 ("All that need be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); Heffner,

420 F.2d at 813 (A violation requires reversal irrespective of whether a new trial will produce the same verdict.).

42. To address a violation of the Accardi doctrine, a court can direct the agency to properly apply its policy, see *Damus*, 313 F. Supp. 3d at 343 (essentially requiring the agency to do what it is already admit is required."), or a court may order relief consistent with the policy. See *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (having the court schedule a bail hearing so that an individual need not wait for ICE to do it).

43. ICE is automatically re-detaining individuals in violation of its own requirement to exercise discretion. This is exemplified by Petitioner re-detention, which occurred with no evaluation of a material change in circumstances and was executed arbitrarily for no other reason than his having already been placed into removal proceeding years past. Such arbitrary action cannot reasonably be shoehorned into ICE's exercise of discretion, as it demonstrates an abuse of discretion or, alternatively, a failure by ICE to make discretionary determinations. Moreover, whatever ICE's discretionary powers may be, ICE must still comply due process and the Constitution, namely providing Petitioner with a hearing before a neutral court whereat ICE must demonstrate through clear and convincing

evidence that any purported material change in circumstances demonstrate that Petitioner is a flight risk or a danger to society.

44. ICE's failure to review Petitioner's custody promptly is prejudicial to him. Prejudice is presumed because Petitioner's fundamental liberty interests and due process rights are at issue. See *Delgado-Corea v. INS*, 804 F.2d 261, 263 (4th Cir. 1986) By arbitrarily re-detaining and keeping Petitioner detained, ICE is abusing its discretion with a capricious execution and prolonging of a detention that was never justified under the law. See *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

45. In situations such as Petitioner's, guidance can be drawn from the Ninth Circuit aversion to any form of unjustified detention, it being odious and anathema to the concept of liberty as the supreme tenet of our civilization. "We have further extended the *Zadvydas* framework to discretionary detention pursuant to Section 1225(b) and 1226(c), finding that indefinite detention under these statues poses the same constitutional concerns present in *Zadvydas*." *Rodriguez v. Hayes*, 591 F.3d 1105 at (9th Cir. 2009). "In *Casas-Castrillon*, moreover, we made clear that this liberty interest applies not only to indefinite detention, but to prolonged detention."

*Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). "Regardless of the stage of the proceedings, the same important interest is at stake." *Id.*

46. As a remedy, this Court should review Petitioner's custody and order his release accordingly.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) The Re-Detention Policy is Arbitrary and Capricious

47. Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

48. The Administrative Procedure Act provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary [and] capricious, . . . or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

49. The re-detention policy is a reviewable final agency action because it is neither tentative nor interlocutory.

50. The re-detention policy departs from longstanding agency precedent, policy, and practice.

51. In adopting the re-detention policy, Respondents provided no reasoned or adequate explanation for the policy, which is a dramatic shift from recent and

longstanding agency policies, and which results in the costly and arbitrary re-detention of individuals who had serious reliance interests in those past policies.

52. Moreover, in adopting the re-detention policy, Respondents failed to adequately consider important aspects of the problem and all relevant factors, including the constitutional limitations on the government's authority to re-arrest and re-detain, and the reliance interests of Petitioner. Respondents instead considered the improper purpose of pressuring noncitizens to abandon their claims for relief and self-deport.

53. The re-detention policy is therefore arbitrary and capricious and an abuse of discretion in violation of the Administrative Procedure Act.

## SECOND CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B)

### The Re-Detention Policy is Contrary to Constitutional Right

54. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

55. The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

56. The Fourth Amendment protects the right of all persons present in the United States to be free from unreasonable seizures by government officials. Petitioner therefore has the right to be free from unreasonable seizures.

57. As a corollary to that right, the Fourth Amendment prohibits re-arrest on the same charges/probable cause without a material change in circumstances.

58. The re-detention policy violates the Fourth Amendment because it authorizes immigration agents to undertake unreasonable seizures by re-arresting Petitioner for the same civil immigration charges as their initial arrest without a material change in circumstances.

## THIRD CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### Petitioner's Detention Violates Substantive Due Process

59. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

60. The Due Process Clause of the Fifth Amendment protects all persons from deprivation of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] clause protects." *Zadvydas*, 533 U.S. at 690.

61. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring a noncitizen's appearance during removal proceedings and preventing danger to the community.

62. Petitioner was previously released on his own recognizance by Respondents. This previous release constituted a determination by Respondents that Petitioner was neither dangerous to the community nor a flight risk.

63. Petitioner has not become a danger or flight risk since his release from custody. His re-detention thus does not serve a legitimate goal. Accordingly, his re-detention would violate the Due Process Clause.

## FOURTH CLAIM FOR RELIEF

### Violation of the Fifth Amendment to the United States Constitution

### Petitioner's Detention Violates Procedural Due Process

64. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Petition as if fully set forth herein.

65. The Fifth Amendment guarantees noncitizens present in the country with due process rights, including the right to not be deprived of a liberty or property interest without notice and a hearing before a neutral decision-maker.

66. Petitioner has already been determined not to pose a flight risk or danger to the community. They have a protected liberty interest in their continued freedom

from detention and are entitled to due process before the government can deprive them of their liberty by re-detaining them. The Due Process Clause prohibits Petitioner's re-detention without a pre-deprivation hearing before a neutral decision-maker in which the government bears the burden of demonstrating that a Petitioner poses a flight risk or danger to the community.

## PRAYER FOR RELIEF

1. Assume jurisdiction over this matter;

2. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three (7) days;

3. Declare that Petitioner's detention without an individualized constitutionally compliant custody determination violates the Due Process Clause of the Fifth Amendment;

4. Issue a Writ of Habeas Corpus ordering the Respondents to release Petitioner from custody;

5. Issue an Order prohibiting Respondents from transferring Petitioner from the district without the court's approval;

6. Declare that Petitioner' continued detention is unconstitutional and unlawful, as it is not reasonably related to any valid purpose of immigration detention and violates the Fifth Amendment guarantee of due process;

7. Declare that Respondents' conduct violates the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706, as arbitrary, capricious, and not in accordance with law;

8. In the alternative, should the Court determine that immediate release is not warranted, order Respondents to provide Petitioner an individualized bond hearing before an impartial immigration judge within 14 days, at which the government bears the burden to justify continued detention by clear and convincing evidence;

9. Award reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

10. Grant such other and further relief as the Court deems just and proper.

DATED: September 30th, 2026.

Respectfully submitted,

____/s/_*Nathaniel L. Nicoll*_____
Nathaniel L. Nicoll, Esq.
Friedman Law Firm
3947 Lennane Drive, Suite 150
Sacramento, CA 95834
(916) 800-4454
Attorneys for Petitioner

# EXHIBIT 1

DEPARTMENT OF HOMELAND SECURITY

# NOTICE TO APPEAR

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: 249376098

In the Matter of:

Respondent: ARMEN OGANISYAN currently residing at:

OTAY MESA DETENTION CENTER, 7488 CALZADA DE LA FUENTE, SAN DIEGO, CA 92154 — 619-661-4071

(Number, street, city, state and ZIP code) (Area code and phone number)

☒ You are an arriving alien.

☐ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Russia and a citizen of RUSSIA;
3. You applied for admission at SAN YSIDRO CA on 2024-05-16;
4. You did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

☒ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

7488 CALZADA DE LA FUENTE, SAN DIEGO, CA 92154

*(Complete Address of Immigration Court, including Room Number, if any)*

on 6/13/2024 *(Date)* at 8:00 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

[signature] Supervisory Asylum Officer

*(Signature and Title of Issuing Officer)*

Date: 05/30/2024

Tustin, CA

*(City and State)*

EOIR – 1 of 36

Exh. 1 – Adm.

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.
**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is ARMENIAN

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_______________________
*(Signature of Respondent)*

Date: ____________

_______________________
*(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on 6/3/2024, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person [ ] by certified mail, returned receipt # ____________ requested [ ] by regular mail

[X] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the Armenian language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

[signature] *(Signature of Respondent if Personally Served)*

C. Castellanos, DO *(Signature and Title of officer)*

EOIR — 2 of 36



Exh. 1 - Adm.

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

FORM I-870 (Rev 05/12/2023)

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
**Record of Determination/Credible Fear Worksheet**

| | | |
|---|---|---|
| **ZLA**<br>Asylum Office Code | **249376098**<br>A-File Number | **OGANISYAN**<br>Noncitizen's Last/ Family Name |
| **Hillary Hassani**<br>Asylum Officer | **RUSSIA**<br>Noncitizen's Nationality | |

***All statements in italics must be read to the applicant***

## SECTION I: INTERVIEW PREPARATION

1.1 Date of Arrival:
**May 16, 2024**

1.2 Place of Encounter:
**Port of Entry**

Specify POE:
**SAN YSIDRO CA**

1.3 Detention status at interview:
**Detained**

1.4 Date of Detention:
**May 17, 2024**

1.5 Place of Detention:
**OTAY MESA DETENTION CENTER, 7488 CALZADA DE LA FUENTE, SAN DIEGO, CA 92154**

1.6 Intended destination upon release from detention or non-detained address in the U.S.:
**Los Angeles, CA**

1.7 Date of Interview:
**2024-05-28**

1.8 Interview Site (applicant's location):
**OTAY MESA DETENTION CENTER**

1.9 Interview mode:
**Telephonic**

1.10 Applicant received and signed Form M-444 and relevant pro bono list:
**Yes**

Date signed:
**May 18, 2024**

1.11 If orientation more than one week from date of detention, explain delay:
-

1.12 Does applicant have consultant(s)/representative?
**Yes**

Consultant(s)/representative name, address, telephone number and relationship to applicant:

UNKNOWN

1.13 Persons present at the interview (select which apply and indicate if in person or by telephone or video conference):

- No one other than applicant, officer, and interpreter (if applicable)

1.14 Language used by applicant in interview:
**ARMENIAN**
1.15 Interpreter used in interview?
**Yes**
Was the interpreter a contractor or provided by the applicant?
**Contractor**
1.16 Asylum officer read the following paragraph to the applicant at the beginning of the interview:
**Yes**

*The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today will be used in deciding your claim and may be used in any future immigration proceedings. It is important that we understand each other. If at any time you do not understand me, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.*

---

## SECTION II: BIOGRAPHIC INFORMATION

2.1 Last Name / Family Name:
**OGANISYAN**

2.2 First Name:
**ARMEN**

2.3 Middle Name:
**-**

2.4 Date of Birth:
**Oct 18, 2003**

2.5 Gender:
**Male**

2.6 Other names and dates of birth used:
-

2.7 Country of Birth:
**Russia**

2.8 Country(ies) of citizenship:

- RUSSIA

2.9 Address prior to coming to the U.S. (list address, city/town, province, state, department and country):
**i lived in Russia and in Armenia**

2.10 Applicant's race or ethnicity:
**Armenian**

2.11 Applicant's religion:
**Christian**

2.12 All languages spoken by applicant:

- ARMENIAN, RUSSIAN

2.13 Marital Status:
**Single, Never Married**

2.14 Did spouse arrive with applicant?
**N/A**

2.15 Is spouse included in applicant's claim?
**N/A**

2.16 If currently married (including common law, informal marriage) list spouse's name, citizenship, and present location (if with applicant, provide A-Number):
**N/A**

| 2.17 Children: | 2.18 List any children: |
|---|---|
| **No** | **N/A** |

2.19 Does applicant claim to have a medical condition (physical or mental), or has the officer observed any indication(s) that a medical condition exists?
**Yes**
Explain Medical Condition:
**spinal cord issues**
2.20 Has applicant notified the facility of medical condition?
**Yes**
2.21 Does applicant claim that the medical condition relates to torture?
**No**
2.22 Does applicant have an email address?
**No**
2.23 If yes, please list all email addresses for the applicant:
**N/A**
2.24 If yes, can the applicant receive confidential information related to their asylum case at the above email address(es)?
**N/A**
2.25 Does applicant have a U.S. phone number?
**No**
2.26 If yes, please list phone number and type (mobile/landline)
**N/A**
2.27 What is the highest level of education the applicant has completed?
**Secondary**

---

## SECTION III: CREDIBLE FEAR INTERVIEW

**The attached notes are not a verbatim transcript of this interview. These notes are recorded to assist the individual officer in making a credible fear determination and the supervisory asylum officer in reviewing the determination. There may be areas of the individual's claim that were not explored or documented for the purposes of this threshold screening.**

The asylum officer shall elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture. Typed Question and Answer (Q&A) interview notes and a summary of material facts as stated by the applicant, any additional facts relied upon by the officer, and analysis of the claim must be attached to this form for all credible fear decisions. These Q&A notes must reflect that the applicant was asked to explain any inconsistencies or lack of detail on material issues and that the applicant was given every opportunity to establish a credible fear of persecution or torture.

☒ 3.1 At the conclusion of the interview, the asylum officer must read the following to the applicant:

*If USCIS determines you have a credible fear of persecution or torture, or, if applicable, a reasonable possibility of persecution or torture, your case will either be referred to an Immigration Judge or may be retained for an asylum merits interview with a USCIS asylum officer, where you may seek asylum or related protection known as withholding of removal. If you are detained, U.S. Immigration and Customs Enforcement or U.S.*

*Customs and Border Protection will also consider whether you may be released from detention. If USCIS determines that you do not have a credible fear of persecution or torture, or where applicable that you do not have a reasonable possibility of persecution or torture, you may ask an Immigration Judge to review the determination. If you are found not to have a fear of persecution or torture, and you do not request review from an immigration judge, you may be removed from the United States as soon as travel arrangements can be made. Do you have any questions?*

☒ 3.2 At the conclusion of the interview, the asylum officer must read a summary of the claim to the applicant.

---

SECTION IV: CREDIBLE FEAR FINDINGS

## A. CREDIBLE FEAR DETERMINATION (AND REASONABLE POSSIBILITY DETERMINATION, WHERE APPLICABLE)

### CREDIBILITY

☒ 4.1 Applicant found credible
☐ 4.2 Applicant found not credible

### NEXUS

☐ 4.3 Race
☐ 4.4 Religion
☐ 4.5 Nationality
☐ 4.6 Membership in a Particular Social Group
☒ 4.7 Political Opinion
☐ 4.8 Coercive Family Planning (CFP)
☐ 4.9 No Nexus

### CREDIBLE FEAR FINDING

☒ 4.10 Credible fear of persecution established, or in the case of a noncitizen determined to have no credible fear of persecution because they are ineligible for asylum pursuant to 8 CFR 208.33(a), reasonable possibility of persecution established.
☐ 4.11 Credible fear of torture established, or in the case of a noncitizen determined to have no credible fear of persecution because they are ineligible for asylum pursuant to 8 CFR 208.33(a), reasonable possibility of torture established.
☐ 4.12 Credible fear of persecution NOT established and credible fear of torture NOT established, or in the case of a noncitizen determined to have no credible fear of persecution because they are ineligible for asylum pursuant to 8 CFR 208.33(a), reasonable possibility of persecution NOT established and reasonable possibility of torture NOT established.

## B. POSSIBLE BARS

☐ 4.13 There are reasonable grounds to believe that the applicant may be subject to a bar(s) to asylum or withholding of removal (select all that apply):

☐ 4.14 Particularly Serious Crime
☐ 4.15 Security Risk
☐ 4.16 Aggravated Felon

☐ 4.17 Persecutor ☐ 4.18 Terrorist ☐ 4.19 Firmly Resettled

☐ 4.20 Serious Non-Political Crime Outside the United States

☒ 4.21 Applicant does not appear to be subject to a bar(s) to asylum or withholding of removal

## C. IDENTITY

☒ 4.22 Applicant's identity was determined with a reasonable degree of certainty (select all that apply):

☒ 4.23 Applicant's own credible statements (If testimony is credible overall, this will suffice to establish the applicant's identity with a reasonable degree of certainty)

☐ 4.24 Passport which appears to be authentic

☐ 4.25 Other evidence presented by applicant or in applicant's file

☐ 4.26 Applicant's identity was not determined with a reasonable degree of certainty (Explain in additional information field below)

---

SECTION V: ASYLUM OFFICER / SUPERVISOR NAME AND SIGNATURES

| | | |
|---|---|---|
| **Hillary Hassani** | *Signed by: Hillary Hassani on Tuesday, May 28, 2024, 12:44 pm* | **2024-05-28** |
| 5.1 Asylum Officer | 5.2 Asylum Officer's Signature | 5.3 Asylum Officer's Decision Date |
| Saya Austin | | 2024-05-29 |
| 5.4 Supervisory Asylum Officer | 5.5 Supervisory Signature | 5.6 Date Supervisor Approved Decision |

---

ADDITIONAL INFORMATION/CONTINUATION

-

EOIR - 8 of 36

Exh. 1 - Adm.

U.S. Citizenship and Immigration Services

Applicant: **ARMEN OGANISYAN**
A #: **249376098**

Officer: **Hillary Hassani**
Date of Determination: **May 28, 2024**

# Circumvention of Lawful Pathways (CLP) Presumption Worksheet (Credible Fear)

## NONCITIZEN SUBJECT TO CIRCUMVENTION OF LAWFUL PATHWAYS (CLP) RULE

Arrival Date: Did the noncitizen enter the United States from Mexico at the southwest land border or adjacent coastal borders on or after May 12, 2023 at 12:00 AM ET?
**Yes**

Date of Arrival:
**2024-05-16**

Manner of Arrival:
**By Foot**

Travel: Did the noncitizen travel through any country apart from their country of citizenship, nationality, or last habitual residence (if stateless) en route to the United States?
**Yes**

Treaty Obligations: Are any of the applicable countries through which the noncitizen traveled signatories to the 1951 Convention Relating to the Status of Refugees or the 1967 Protocol Relating to the Status of Refugees?
**Yes**

List at least one applicable country:
- Mexico

## EXCEPTIONS TO THE PRESUMPTION OF ASYLUM INELIGIBILITY

DHS Scheduling System Exception: Has the noncitizen made a sufficient showing that they, or a family member traveling with them as described in 8 CFR 208.30(c), could establish that they presented at a port of entry, pursuant to a pre-scheduled time and place, or presented at a port of entry, without a pre-scheduled time and place, but has demonstrated that it was not possible to access or use the DHS scheduling system due to language barrier, illiteracy, significant technical failure, or other ongoing and serious obstacle to access?
**Yes**

Evidence or Explanation:

CBP ONE APPOINTMENT

## DETERMINATION

U.S. Citizenship and Immigration Services

Applicant: **ARMEN OGANISYAN**
A #: **249376098**

Officer: **Hillary Hassani**
Date of Determination: **May 28, 2024**

Does the presumption of ineligibility apply?
**No**

U.S. Citizenship and Immigration Services

Applicant: **ARMEN OGANISYAN**
A #: **249376098**

Officer: **H Hassani**
Interview Date: **May 28, 2024**

## Case Review

| | |
|---|---|
| DOB: **2003-10-18 (Age 20)** | Sex: **Male** |
| Country of Birth: **Russia** | Nationality: **RUSSIA** |
| Entry Date: **2024-05-16** | Port of Entry: **SAN YSIDRO CA** |
| Detention Status: **Detained** | Apprehension Date: **2024-05-17** |
| Detention Facility: **OTAY MESA DETENTION CENTER** | Attorney: |

# Introduction

## Interview Start Time

Interview Start Time
**unknown time value**

## Interpreter and Oath

Language
**ARMENIAN**

Interpreter Service
**LanguageLine**

Call Start Time
**10:05 AM**
Call End Time
**unknown time value**

Interpreter/Monitor ID
**354309**

I'm using this service for:
**Interpreter**

### Interpreter Oath

Do you affirm:

- that you will truthfully, literally and fully interpret the questions asked by the officer and the answers given by the applicant;
- that you will not add to, delete from, comment on, or otherwise change the matter to be interpreted;
- that you understand that all matters discussed in this interview are confidential and that you will not share what you hear today with any person; and
-

that you will immediately notify the officer in this case if you become aware of your inability to interpret in a neutral manner on account of a bias against the applicant or the applicant's race, religion, nationality, membership in a particular social group, or political opinion?

☒ Interpreter/Monitor Under Oath

## Interview Format

Detention Status
**Detained**
Detention Location
**OTAY MESA DETENTION CENTER**
Method of Interview
**Telephonic**

What is your full and complete name?
**OGANISYAN, Armen**
What is your date of birth?
**10/28/2003**
Is anyone else in the room with you?
**No**

## Interpreter Guidance

**To Interpreter**: Interpreter, please introduce yourself to the applicant and let the applicant know that you have been sworn in and you will keep everything discussed today confidential.

**To Applicant**: Before we get started, I have instructions for you and your interpreter to ensure the accuracy of this interview.

- Your interpreter must interpret everything that is said today literally and completely, and that everything remains in the first person.
- You are not to have any side conversations with your interpreter. If you do not understand a question, your interpreter must tell me and I will clarify it for you. Also, if the interpreter doesn't understand something you said, the interpreter must let me know.
- Working with an interpreter can be difficult. Please make sure to keep your sentences short. If you have a longer answer, please break it up into shorter pieces.
- Please tell me immediately if you feel uncomfortable with this interpreter and I will request a new interpreter.

## Language

What is your native language?
**ARMENIAN**
Do you speak any other languages?
**Yes**
What other languages do you speak?

- RUSSIAN

What language would you like to proceed with for this interview today?
**ARMENIAN**

☒ Interpreter speaks native/preferred language

Q. Do you understand the interpreter?

**A. Yes**

Q. Interpreter, do you understand the applicant?

**A. Yes**

Q. Do you feel comfortable using an interpreter of the gender available on the phone today?

**A. Yes**

Q. Do you feel comfortable speaking with a female officer today?

**A. Yes**

## Counsel

Do you have an attorney or consultant?
**Yes**

Name
**UNKNOWN**
Address

Phone Number
**UNKNOWN**
Relationship to Applicant
**attorney**

Q: Have you had time to discuss your case with your attorney?
A: **They were supposed to come today or tomorrow. I did talk to them about 2 or 3 days**

Q: Is your attorney aware your interview is today?
A: **No**

Q: Are you comfortable proceeding without your attorney?
A: **There is no different to me.**

Q: It is up to you, we can continue today without your attorney or we can see if we can reschedule to have your attorney present?
A: **Let's continue without attorney**

## Applicant Oath

Next, I would like to place you under oath. This is a legal obligation to tell the truth. Please stand and raise your hand. Do you swear or affirm to tell the truth, the whole truth, and nothing but the truth?
**Yes**

**Officer:** Thank you. You may lower your hand and take a seat.

## M-444

Form M-444 included in the referral packet
**Yes**

According to our records, you received form M-444 on:
**May 18, 2024**

Q. The M-444 form explains the credible fear determination process. Do you understand the credible fear process that was explained on this form?

**A. Yes**

Do you have any questions about the credible fear process?
**no**

## Preliminary

U.S. Citizenship and Immigration Services | Applicant: **ARMEN OGANISYAN** A #: **249376098** | Officer: **H Hassani** Interview Date: **May 28, 2024**

## Voluntary Withdrawal Advisal

Country(ies) of Citizenship

- RUSSIA

## Purpose of the Interview

**To Applicant:** I will now provide you an explanation of the purpose of the interview and a few instructions.

**To Interpreter (if applicable):** Interpreter, please read Section 1.16 of form I-870 (rev. 05/12/2023) to the applicant.

Section 1.16: The purpose of this interview is to determine whether you may be eligible for asylum or protection from removal to a country where you fear persecution or torture. I am going to ask you questions about why you fear returning to your country or any other country you may be removed to. It is very important that you tell the truth during the interview and that you respond to all of my questions. This may be your only opportunity to give such information. Please feel comfortable telling me why you fear harm. U.S. law has strict rules to prevent the disclosure of what you tell me today about the reasons why you fear harm. The information you tell me about the reasons for your fear will not be disclosed to your government, except in exceptional circumstances. The statements you make today will be used in deciding your claim and may be used in any future immigration proceedings. It is important that we understand each other. If at any time you do not understand me, please stop me and tell me you do not understand so that I can explain it to you. If at any time you tell me something I do not understand, I will ask you to explain.

☒ I-870 Section I Purpose of Interview Read to Applicant

Q: Records indicate you last entered the United States on 05-16-2024, at or near San Ysidro, CA, and were apprehended on 05-16-2024. Is that correct?
A: **Yes**

Q: Was this the first time you entered the U.S.?
A: **Yes**

## Medical Issues / Ability to Testify

Do you currently have any medical or health problems that I should be aware of, physical or mental?
**Yes**
What is your medical/health problem?

**spinal cord issues**
Does your medical/health problem relate to the harm you suffered?
**no**
Have you notified the facility of your medical condition?
**Yes**
Are you taking any medications?
**no**
Is there anything that might affect your ability to testify today?
**no**

### Fear of Returning to Country

You previously indicated that you were afraid to return to your country. Are you still afraid to return to your country?
**Yes**
Do you want to continue with your credible fear interview today?
**Yes**

## Biographic

### Biographic Information

Other than the name you gave me, have you ever been known by any other names or aliases?
**No**
Have you ever used any other dates of birth?
**No**
What is your gender?
**Male**
What country were you born in?
**Russia**
What country are you a citizen of?
**Russia**
Are you a citizen of any other country?
**No**
What is your race or ethnicity, for example, do you identify as Hispanic, Indigenous, Latin, Mixed, White, Black, etc.?
**Armenian**
Do you have a religion; if so, what is it?

**Christian**

What was the address of the last place you lived before coming to the U.S?
**i lived in Russia and in Armenia**
What is your intended destination upon release from detention?
**Los Angeles, CA**
Do you have an email address?
**No**
Do you have a U.S. phone number?
**No**
What is the highest level of education that you have completed?
**Secondary**

Q: What country did you live in right before coming into the United States?
A: **Armenia**

Q: How long were you living in Armenia?
A: **Basically I used to go and come back to Armenia it was kind of half and half I did not really live there I was going back and forth to Russia and Armenia**

Q: What year were you last in Russia?
A: **October of 2023**

Q: Do you have legal permission to live in Armenia?
A: **Temporary, yes.**

Q: What kind of temporary permission do you have?
A: **Now it is expired.**

Q: When did it expire?
A: **I don't remember it was taken for 1 year and it is passed and now it is expired.**

Q: Is it possible for you to get citizenship in Armenia?
A: **No**

Q: Have you ever been a citizen of Armenia?
A: **No never**

Q: Have you ever tried to get citizenship in Armenia?
A: **No**

Q: How were you able to get temporary permission to live in Armenia?
A: **I went there and registered temporary so they gave me permission to live but it was temporary and it expired.**

Q: Is it possible for that to turn into citizenship or permanent permission?
A: **No**

### Spouse and Children

Are you or have you ever been married or lived with a partner?
**Single**

Do you have any children?
**No**

### Linked Case(s)

Did any family members, including your partner if you have one, travel with you to the United States?
**No**

## AOL (for non-Mexicans who entered at SWB)

### AOL Screening

Did you ever cross the border from Mexico into the U.S. before now?
**No**

## Circumvention of Lawful Pathways

### Circumvention of Lawful Pathways (CLP) Rule

Is the applicant a Mexican national?
**No**

Did the applicant enter the southwest land border or adjacent coastal borders on or after May 12, 2023 at 12:00AM ET?
**Yes**

CLP Screening Intro Script

It appears that you are subject to the lawful pathways condition on asylum eligibility because you entered the U.S. on or after May 12, 2023 at 12:00 AM ET without documents sufficient for lawful admission, and traveled through at least one country, namely Mexico, that is a signatory to the Refugee Convention. In order to assess whether the condition should apply to you, I will ask you some questions to determine if you qualify for an exception or if you can rebut the presumption that you are ineligible for asylum.

EXCEPTION A: PAROLE AUTHORIZATION

Q: Did you or any of the family members you traveled with have authorization to travel to the U.S. to seek parole?
A: **No**

EXCEPTION B: CBP ONE APP

Q: When you entered at San Ysidro, did you use the CBP One App to enter?
A: **Yes**

Q: What day/time was your appointment?
A: **May 16 at 8**

RECORDS CONFIRM

EXCEPTION C: OTHER PROTECTION SOUGHT

## CLP Exceptions

Did the applicant establish an exception to the Circumvention of Lawful Pathways rule?
**Yes**
The noncitizen, or a family member traveling with the noncitizen:
**Presented at a port of entry (POE), pursuant to a pre-scheduled time and place, or presented at a port of entry, without a pre-scheduled time and place, if the noncitizen demonstrates that it was not possible to access or use the DHS scheduling system due to language barrier, significant technical failure, illiteracy, or ongoing and serious obstacle to access**

## Designated Country of Removal

U.S. Citizenship and Immigration Services | Applicant: **ARMEN OGANISYAN** A #: **249376098** | Officer: **H Hassani** Interview Date: **May 28, 2024**

## Country of Screening

Country(ies) of Nationality

- RUSSIA

Screening for: **RUSSIA**

## Past Harm

Q: Before we begin to discuss your fears, do you have any questions for me?
A: **No**

Q: Please listen carefully and answer my questions directly. Please speak in short sentences and in a clear voice for the interpreter. If what you say is too long, the interpreter will pause you. Since this is a screening interview, I just have specific questions to ask. We'll get to your whole story, but we need to take it step by step. I'll give you time at the end to add anything you think we missed.
A: **Ok**

Q: You said you are afraid to return to Russia. Who exactly are you afraid of there?
A: **I am afraid of because we did some protests there and regarding the Russian and Ukrainian war and they beat us**

Q: Who exactly are you afraid of there?
A: **I am afraid of the war and I am afraid they will take people of my age to the war and I am not a murderer and I don't want to go take any innocent people's lives and I am afraid of the president of Russia.**

Q: How many protests have you attended against the war and the government in Russia?
A: **Basically every day I was going to protests but they were not able to catch me to take me I was running away**

Q: Have you ever been physically harmed at one of these protests?
A: **Yes.**

Q: How many times have you been physically harmed?
A: **3**

Q: When was the worst time you were harmed at one of the protests?
A: **Well yes on November 3rd I got harmed and hurt to my head and my clothes were ripped and I just run away**

Q: Of what year?
A: **2023**

Q: Where were you exactly when that happened?
A: **At a protest in the city**

Q: How many other people were at that protest?
A: **There were a lot, I cannot say exactly but maybe about 1,000 or 2,000 people there**

Q: What exactly was the protest about?
A: **Against the war in Ukraine and there would be no more innocent people would die**

Q: How did you find out about the protest?
A: **My friend informed me that there was a protest and I went.**

Q: Who harmed you at that protest?
A: **Policemen**

Q: How did you know they were policemen?
A: **They were wearing the uniforms**

Q: How many officers harmed you that day?
A: **2 or 3, one person caused the harm and 2 others were following when I ran.**

Q: Were they doing that to everyone there that was protesting or you specifically?
A: **Whoever was there at that protest they were doing that against them**

Q: What did the officers say to you when they approached you?
A: **They didn't say anything they were just pushing us away and sending us away. They were beating and the purpose was to stop the protest.**

Q: How exactly did they harm you?
A: **They struck my head and pulled my clothes, they were trying to pull me to take with them but I was able to escape and flee.**

Q: Did they ever catch up to you after you ran?
A: **No they looked for me but they tried to find me but they were not able to find me**

Q: How do you know they looked for you?
A: **I was at home and they came and knocked on the door, I was hiding there, they were asking for me at my home my family told them there was no one there but they came a few times after that.**

Q: Did they know your name when they beat you that day on November 3rd?
A: **Yes they did**

U.S. Citizenship and Immigration Services | Applicant: **ARMEN OGANISYAN** A #: **249376098** | Officer: **H Hassani** Interview Date: **May 28, 2024**

Q: How do you think they knew your name?
A: **Because during the protest they asked me my name and I told them and that is how they knew**

Q: Did they go to your house that same day or a different day?
A: **Different day**

Q: How long after the protest did they go to your house?
A: **1 day later and after that day, the 4th and the 5th**

Q: Did they tell your family why they were looking for you?
A: **Yes they said that I must go with them because of the protest I attended and my family said I was not here and to go someplace else.**

Q: Did they say why they wanted you to go with them?
A: **They wanted me to take with them so they will count me and take me to the war to fight and imprison me.**

Q: Did they ever go to your house before that protest?
A: **Before that I received a letter to go and present because it is my age to serve in the war and I did not want that but that is why we did the protest**

Q: Did you have any injuries after you were beaten on November 3rd?
A: **The area on my head was swollen and up until now that swollen part is still there from my head.**

Q: Did you seek out any medical attention after you were harmed?
A: **No**

Q: When was the last time the police have tried to find you in Russia?
A: **The last time it was on the 5th and after that they saw that there is no sense they did not come back**

Q: Okay so the last time they went to your house was November 5th, correct?
A: **Yes and after that they looked for me other places**

Q: Where did they look for you after November 5th?
A: **I know they looked for me in a neighborhood in those protests but I was afraid to go even there because I was afraid they would catch me and take me there.**

Q: How do you know they were looking for you there?
A: **The protests is?**

Q: How do you know the police were looking for you after November 5th?
A: **I saw police cars in those areas that they were going around looking for people and they were not protests but they were still driving around. They were looking for us to take.**

Q: How do you know they were looking for you rather than just being in the area?
A: **Because they were not coming and staying they were going around and looking for people.**

Q: Have the police tried to contact you directly in any way after November 5th?
A: **I don't know I didn't have Russian phone with me but I know that they were looking for me, they knew me, they would recognize my face. They were looking for me to take with them.**

Q: What makes you believe the police were looking for you because of the protests rather than because of the war?
A: **Because it is my age to go to serve in the war and the protests were the reason to take me to imprison me and make me serve in the war**

Q: Are you part of any political groups?
A: **No**

Q: How long have you held opinions against the war and the government of Russia?
A: **Since the war started, since then.**

Q: If you had to guess, how many protests have you attended for those reasons?
A: **The recently basically recent time because before that I was not getting letters to go report so then I started protesting the war and the government, once I received the letter I started doing those protests.**

Q: Would you continue to protest for those reasons if you returned to Russia?
A: **Yes I would continue to protest against the war and I am afraid if I go back they will catch me there.**

Q: Have you been harmed or threatened in any other way by police that we haven't yet talked about?
A: **Mainly they were from the protests that I was harmed**

Q: What are the dates of the other protests you were harmed at?
A: **On 3rd I went they came to home on the 4th and on the 5th. I went to on October 28th and 30th.**

Q: Were you harmed at the protests on October 28th and 30th?
A: **Yes**

Q: Who harmed you at those two protests?
A: **Again the uniformed policemen**

Q: How exactly were you harmed there at those two protests?
A: **Mainly they just like strike and hit and but not such in a hard way like the 3rd time.**

Q: Did you have injuries after those 2 protests?
A: **Just scratches**

Q: Were those protests also against the war and government?
A: **Yes**

Q: Did the police say anything while they harmed you at those 2 protests?
A: **No they were just fighting us so the protest would stop.**

Q: Other than what we talked about, have you been harmed or threatened in any other way in Russia?
A: **No.**

## Well-Founded Fear

Q: What do you fear will happen to you if you are returned to Russia?
A: **It is not safe there I do not feel safe there, it is dangerous in that country any second they can bomb on me or they can catch me to imprison me or take me to fight in war**

Q: How are political prisoners treated in prison in Russia?
A: **They are treated badly and so there are mixed opinions on there, some of them are against the war. There are mixed opinions there.**

Q: How do you know that?
A: **Well it is known there, it is all over, you can see for yourself on the news.**

Q: What makes you think they would still want to harm you?
A: **Because they are taking people to the war there to kill innocent people it is dangerous there it is dangerous to live there and any moment they can bomb**

Q: I understand, but what makes you believe the government still wants to harm you specifically?
A: **Not specifically me but everyone, everyone to go to the war, everyone that protests, everyone to kill innocent people.**

Q: What reason would they have for wanting to harm you now?
A: **Well because all this time they were calling me to go there and I was not going there and then I went to the protest and they were not able to find me after, they will not let me go.**

Q: How would they know if you returned to Russia?
A: **Well they can easily to declare you as a wanted person and there is a way that they can do it and they can put your passport as wanted person and they will know as soon as you enter the country**

Q: Have they listed you as a wanted person?
A: **I don't know at this moment if they declared me as a wanted person but there is a good chance that they will do it if they did not do it yet I am sure about that.**

Q: When did you leave Russia after they tried to find you November 5th?
A: **After November 5th as I can recall on November 10th I left Russia.**

Q: Did you return to Russia after that?
A: **Yes I did return last month on the 30th if I remember correctly**

Q: Were you threatened or harmed in any way while you were there?
A: **Harmed during the protests but otherwise no that Is why I left Russia.**

Q: What month exactly were you in Russia when you went back?
A: **I left Russia in November.**

Q: WHen did you return to Russia after that?
A: **Last month 30th I went through Russia to another country**

Q: When you say last month, do you mean April 2024?
A: **Yes.**

Q: How long were you in Russia in April of this year?
A: **I was only in Russia to pass through to another country, I did not take time there.**

Q: When you say you passed through, how long exactly were you in Russia in April?
A: **About 3 hours or 4 hours.**

Q: Has the Russian government tried to find you or contact you in any way since you left Russia?
A: **After leaving Russia they did not try to contact me that I know of. I don't know if they did now or not, I don't have any way of knowing that.**

Q: Do you believe the police or government in Russia can protect you from the police?
A: **No**

Q: Aside from what we already discussed, do you fear being harmed by anyone else in Russia for any reason?
A: **I am afraid of police there are no other people I am afraid of**

Q: Are you afraid of police for the reason we already discussed or something else?
A: **There are no other reasons only what we talked about**

## Internal Relocation

Q: Do you think you could live safely in another part of Russia?
A: **No**

Q: Why not?
A: **It doesn't matter which part I live, if they want to find me they will find me**

Q: Would you face any difficulties or hardships if you had to relocate to another part of the country?
A: **Yes**

## CAT

Q: other than what we talked about, Have you ever had any problems with the police or any public official in Russia?
A: **No**

Q: other than what we talked about, Has anyone who works for the police or the government of Russia ever threatened or harmed you?
A: **No but it was just the hire ranks policemen that were threatening to catch us.**

Q: Is this what we talked about earlier or is this something else?
A: **Yes just what we already spoke about**

Q: other than what we talked about, Do you fear harm from a public official, or anyone affiliated with the government in Russia?
A: **No**

Q: Would the police in your area try to protect you from the police you fear if they knew that you were going to be harmed?
A: **No**

## Additional Nexus Questions

Q: Have you ever been harmed or threatened, or do you fear being harmed because of your race in Russia?
A: **There is a possibility that because I am a different nationality they could be after me, I am not sure but there is a possibility because they are looking for other nationality people there too.**

Q: Is this related to what we were talking about or is this separate?
A: **It is what we talked about**

Q: What makes you believe they are targeting you because of your race?
A: **Because mainly they are focused on the people that have a different nationality but were born in Russia. It is not just me, but people that have different nationality that were born in Russia**

Q: What makes you believe that?
A: **Because I saw that they are catching mostly people with various nationalities than Russian people. It is only my opinion**

Q: Did the police ever mention your nationality to you?
A: **No it is just when you tell the first and last name they already recognize the name I guess.**

Q: Do you fear any other harm because of your race?
A: **No**

Q: Have you ever been harmed or threatened, or do you fear being harmed because of your religion in Russia?
A: **It is possible related to my religion did I understand that correct?**

Q: Yes, have you ever been harmed or threatened, or do you fear being harmed because of your religion in Russia?
A: **No not my religion no**

Q: other than what we discussed, Have you ever been harmed or threatened, or do you fear being harmed because of your nationality in Russia?
A: **No**

Q: other than what we discussed, Have you ever been harmed or threatened, or do you fear being harmed because of your political opinion in Russia?
A: **Yes I am afraid just being with that nation that they can catch me and harm me just being in that nation**

Q: I understand, but other than what we discussed, Have you ever been harmed or threatened, or do you fear being harmed because of your political opinion in Russia?
A: **Not only because of political opinion you can just walk outside and a bomb can fall on you and it happens this kind of happens already.**

Q: I understand, but please listen carefully and only answer the questions I ask. Other than what we discussed, Have you ever been harmed or threatened, or do you fear being harmed because of your political opinion in Russia?
A: **Well just what I said we talked about it, just my opinion about that. They can do it.**

Q: Have you ever been harmed or threatened, or do you fear being harmed because of some characteristic that you have that makes you different from other people in Russia?
A: **No**

Q: Have you ever been harmed or threatened, or do you fear being harmed by a family member, such as a partner, spouse, parents, grandparent, aunt, or uncle in Russia?
A: **No**

Q: Have you ever been harmed or threatened, or do you fear being harmed by anyone else for any other reason we did not talk about yet?
A: **No there are no other reasons**

## Mandatory Bars

Q: Other than coming to the United States, have you traveled or lived outside of your country?
A: **Temporarily in Armenia**

Q: You stated your status Is expired, correct?
A: **Yes**

Q: Is it possible to renew it?
A: **No.**

Q: Lawful status may include but is not limited to asylum status, refugee status, permission to work, temporary and permanent residency and citizenship. Have you ever been offered or received lawful status from a country other than your own?
A: **No**

Q: Have you ever harmed anyone for any reason?
A: **No**

Q: Have you ever helped someone to harm anyone for any reason?
A: **No**

Q: Have you ever committed a crime in any country?
A: **No**

Q: Have you ever been arrested or detained for any reason in any country?
A: **No**

Q: Have you ever been charged with or convicted of a crime in any country?
A: **No**

Q: Have you ever served in the military or received any military-type training?
A: **No**

Q: Have you ever assisted or been a member of a criminal group, such as a gang, cartel, or other organized criminal group?
A: **No**

Q: Have you ever committed or helped to commit an act involving the use of firearms or other weapons?
A: **No**

Q: Are you or have you ever been a member of an armed group or a group that uses violence to achieve its goals?
A: **No**

Q: Have you ever provided any type of support, like food, housing, money, or transportation, to an armed group or any group or person that uses violence to achieve their goals?
A: **No**

Q: Have you ever tried to convince others to join or give money or other things of value to an armed group or to any group or person that uses violence to achieve its goals?
A: **No**

Q: Do you intend to do anything illegal in the U.S.?
A: **No**

# Conclusion

## Summary of Testimony

**Officer:** Please give me a moment to review my notes and summarize what we have discussed.

Summary

You were threatened and beaten by police officers in Russia. You believe you were targeted because you were protesting the war and they want to recruit you to fight. You fear they could imprison you or force you to fight in the war if you return. You do not believe the police can protect you since it is the government you fear.

☒ Officer summarized claim

Is this summary correct?
**Yes**

Are there any changes or additions you would like to make?
**no**

Is there anything else that is important to your claim that we have not yet discussed?
**no**

## Conclusion Statement (I-870 Section III)

**To Applicant:** I will now provide you an explanation of what will happen after this interview

**To Interpreter (if applicable):** Interpreter, please read section 3.1 of Form I-870 (rev. 05/12/2023) to the applicant.

Section 3.1: If USCIS determines you have a credible fear of persecution or torture, or, if applicable, a reasonable possibility of persecution or torture, your case will either be referred to an Immigration Judge or may be retained for an asylum merits interview with a USCIS asylum officer, where you may seek asylum or related protection known as withholding of removal. If you are detained, U.S. Immigration and Customs Enforcement or U.S. Customs and Border Protection will also consider whether you may be released from detention. If USCIS determines that you do not have a credible fear of persecution or torture, or where applicable that you do not have a reasonable possibility of persecution or torture, you may ask an Immigration Judge to review the determination. If you are found not to have a fear of persecution or torture, and you do not request review from an immigration judge, you may be removed from the United States as soon as travel arrangements can be made. Do you have any questions?

☒ I-870 Section III Conclusion Statement Read to Applicant
Do you understand what was read to you?
**Yes**
Do you have any questions?
**No**

Q: Did you understand all the questions I asked today?
A: **Yes**

Q: Did you understand the interpreter?
A: **Yes**

Q: Thank you for speaking with me. Please do not hang up and knock on the door for the officer to come to the phone.
A: **Thank you**

## Dismiss Participants

Interpreter, did you understand the applicant?
**Yes**

**To the applicant:** Thank you for speaking with me today, this is the end of today's interview. (Instruct applicant to hang up the phone, or ask to speak to the official at the facility if necessary.)

**To the attorney/consultant:** Counsel, thank you for your participation today.

**To the interpreter:** Interpreter, thank you for your service today. You may disconnect.

Interpreter/Monitor End Time
**11:52 AM**

## Interview End Time

Interview End Time
**11:52 AM**

U.S. Citizenship and Immigration Services

Applicant: **ARMEN OGANISYAN**
A #: **249376098**

Officer: **Hillary Hassani**
Date of Determination: **May 28, 2024**

# Credible Fear Determination Checklist and Written Analysis

Country
**RUSSIA**

## DECISION

Credible Fear Determination
**Positive**

## HARM

Has the applicant testified that they have experienced past harm in their country?
**Yes**

Harm (for testimony elicited):
**beaten, threatened**
Entities (for testimony elicited):
**Police**

Has the applicant testified that they fear future harm if returned to their country?
**Yes**

Harm (for testimony elicited):
**imprisonment, forced military recruitment**
Entities (for testimony elicited):
**Police**

## CREDIBILITY

Was the applicant's testimony credible?
**Yes**

## ANALYSIS

There is a significant possibility the applicant can establish

U.S. Citizenship and Immigration Services

Applicant: **ARMEN OGANISYAN**
A #: **249376098**

Officer: **Hillary Hassani**
Date of Determination: **May 28, 2024**

**Past persecution**

Protected ground:

- Political Opinion

Specify:
**Anti-government**

Past Persecution Written Analysis

The applicant testified he has attended multiple anti-war and anti-government protests in Russia. The applicant testified he has been physically harmed while attending three of these protests. The applicant testified uniformed police officers hit him at the protests. Additionally, the applicant testified police officers arrived at his home and stated they needed to find him because of his involvement in protests against the government. The applicant fears imprisonment and forced military recruitment if he returns to Russia. The testimony provided by the applicant demonstrates a significant possibility of establishing past persecution.

Uploaded on: 06/03/2024 at 04:41:38 PM (Pacific Daylight Time) Base City: OTM

* Non-Profit Organization
** Referral Service
*** Private Attorney

# List of Pro Bono Legal Service Providers

Updated January 2024

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## Otay Mesa Immigration Court

### Otay Mesa, California (page 1 of 3)

**Casa Cornelia Law Center***

Post Office Box 12666
San Diego, CA 92112
Tel: (619) 231-7788
Fax: (619) 231-7784
www.casacornelia.org
services@casacornelia.org

- Services include: Asylum, Withholding of Removal, UN Convention Against Torture, Defensive VAWA, U, T Visas, and SIJS, Bond Hearings.
- Focus on asylum seekers, and victims of serious crime.
- Will accept detained cases
- Call for assistance
- Languages: Spanish; multilingual interpretation may be available.

**ABA Immigration Justice Project***

2727 Camino del Rio South, Suite 320
San Diego, CA 92108
Tel: (619) 255-8810
Fax: (619) 255-8849
contact@abaijp.org
http://www.americanbar.org/groups/public_services/immigration/projects_initiatives/immigration_justice_project_ijp_of_san_diego.html

- Services limited to San Diego, CA
- Office is not open to the public, please call for appointment

**Jewish Family Service of San Diego***

8788 Balboa Avenue
San Diego, CA 92123
Tel: (858) 637-3365
Fax: (858) 637-3011
immigration@jfssd.org
http://www.jfssd.org/site/PageServer?pagename=programs_refugee_main

- Please call for an appointment
- Please leave a voicemail any time day or night. Calls returned in the order received. If currently detained and you reach our voicemail, leave your full name and A-number in a voicemail and we will schedule a meeting in person or remote.
- Specialize in Bond Hearings, Removal Defense, Cancellation of Removal, Asylum, Withholding of Removal, UN Convention Against Torture, Adjustment of Status, VAWA, U Visa, SIJS and T visa.
- Languages: Spanish and multilingual interpretation may be available

**Southern California Immigration Project***

2534 State Street, Suite 208
San Diego, CA 92101
Tel: (619) 516-8119
sparacoscip@gmail.com
www.socalimmigrationproject.org

- African countries preferred
- Asylum cases only, including LGBTQ
- No hablamos español

Individuals must contact the providers on this list directly to request legal services. Although the providers on this list offer pro bono (free) legal representation, they may not have the capacity at this time to accept new cases.

Disclaimer: As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on the list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of the organizations or attorneys.

* Non-Profit Organization
** Referral Service
*** Private Attorney

# List of Pro Bono Legal Service Providers

Updated January 2024

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## Otay Mesa Immigration Court

| Otay Mesa, California (page 2 of 3) | |
|---|---|
| **American Bar Association Detention and LOP Information Line****<br><br>immcenter@americanbar.org<br>https://www.americanbar.org/groups/public_interest/immigration/<br><br>• Pro se case assistance for detained respondents only<br>• Dial 2150# from the detention center<br>• To contact on behalf of a detained individual, email immcenter@americanbar.org.<br>• The American Bar Association Commission on Immigration Detention and LOP Information Line is not available to provide free legal services for noncitizens scheduled for Credible Fear Interviews and/or Asylum Merits Interviews | **Legal Aid Society of San Diego***<br><br>110 South Euclid Avenue<br>San Diego, CA 92114<br>Tel: (619) 738-9832<br>Fax: (619) 263-5697<br>info@lassd.org<br>www.lassd.org<br><br>• Call (619) 738-9832 on Wednesdays from 8AM to 11AM for a free removal defense assessment<br>• We provide detained and non-detained representation in bond, asylum, cancellation of removal, and affirmative filings<br>• Languages: Staff speaks Spanish. Can provide interpretation in most languages |
| **Al Otro Lado***<br><br>634 S. Spring Street, Suite 908<br>Los Angeles, CA 90014<br>Tel: (323) 238-9935<br>info@alotrolado.org<br>https://www.alotrolado.org<br><br>• Asylum, WOR, CAT, Defensive VAWA, T Visa, U Visa, Cancellation, and Bond; Please call and leave a message to schedule an appointment<br>• Languages: Spanish, English, and others with interpretation services | **Immigrant Defenders Law Center***<br><br>303 A Street, Suite 305<br>San Diego, CA 92101<br>Tel: (213) 314-0701<br>Fax: (213) 282-3133<br>sdinfo@immdef.org<br><br>• Must be low income<br>• Languages: Spanish, other languages available upon request |

Individuals must contact the providers on this list directly to request legal services. Although the providers on this list offer pro bono (free) legal representation, they may not have the capacity at this time to accept new cases.

Disclaimer: As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on the list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of the organizations or attorneys.

Uploaded on: 06/03/2024 at 04:41:38 PM (Pacific Daylight Time) Base City: OTM

* Non-Profit Organization
** Referral Service
*** Private Attorney

# List of Pro Bono Legal Service Providers

Updated January 2024

http://www.justice.gov/eoir/list-pro-bono-legal-service-providers

## Otay Mesa Immigration Court

| Otay Mesa, California (page 3 of 3) | |
|---|---|
| **RusCrane Law Firm, A.P.C.***<br><br>Agee Street<br>San Diego, CA 92122<br>Tel: (858) 208-3708<br>services@ruscranelaw.org<br>https://ruscranelaw.org<br><br>• No walk-ins<br>• Please call for an appointment<br>• Detained and non-detained cases<br>• Household income must be at or below the federal poverty guidelines<br>• Languages: Russian and multilingual interpretation may be available | **Alliance for African Assistance***<br><br>5952 El Cajon Blvd.<br>San Diego, CA 92115<br>Tel: (619) 286-9052<br>Fax: (619) 286-9052<br>info@alliance-for-africa.org<br>www.alliance-for-africa.org<br><br>• No walk-ins<br>• U-Visas, T-Visas, SIJS, VAWA, DACA, family-based petitions, adjustment of status, asylum, and other remedies<br>• Call or email for an appointment<br>• Must be low-income<br>• Languages available upon request |

Individuals must contact the providers on this list directly to request legal services. Although the providers on this list offer pro bono (free) legal representation, they may not have the capacity at this time to accept new cases.

Disclaimer: As required by 8 C.F.R. § 1003.61, the Executive Office for Immigration Review (EOIR), Office of the Director, maintains a list of organizations and attorneys qualified under the regulations who provide pro bono or free legal services. The information posted on the list is provided to EOIR by the Providers. EOIR does not endorse any of these organizations or attorneys. Additionally, EOIR does not participate in, nor is it responsible for, the representation decisions or performance of the organizations or attorneys.

## CERTIFICATE OF SERVICE

I hereby certify that on __9/30/2026_______, I caused the foregoing Petition for Writ of Habeas Corpus to be served by U.S. mail/electronically to the following:

TODD BLANCHE
United States Attorney General,
Office of Immigration Litigation
U.S. Department of Justice / Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

MARKWAYNE MULLIN, Secretary
U.S. Department of Homeland Security
245 Murray Lane SW
Washington, DC 20528
United States

TODD M. LYONS
Director of Enforcement and Removal Operations for the United States
500 12th St SW Washington, DC 20536
United States

JAMES JANEKA
Warden, Adelanto ICE Processing Center
10400 Rancho Road, Adelanto, CA 92301
United States

__/s/_*Nathaniel L. Nicoll*_____________
Nathaniel L. Nicoll, Esq.
Friedman Law Firm
3947 Lennane, Suite 150
Sacramento, CA 95834
(916) 800-4454
Attorneys for Petitioner